**E-filing**

OA 91 Criminal Complaint

# United States District Court

NORTHERN DISTRICT OF CAILFORNIA

UNITED STATES OF AMERICA
V.
JOEL SANCHEZ, JUAN CARLOS ZEPEDA-GONZALEZ AND ALFREDO SANCHEZ,

**CRIMINAL COMPLAINT**

Case Number: 07-70318 WDB

*FILED JUN - 1 2007 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA OAKLAND*

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about May 31, 2007 (Date) in Alameda County, in the Northern District of California defendant(s) did,

(Track Statutory Language of Offense)

knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, namely, more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

in violation of Title 21 United States Code, Section(s) 841(b)(1)(A)(viii)

I further state that I am a(n) Special Agent - Drug Enforcement Administration (Official Title) and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT WILLIAM TODD ARMSTRONG

MAXIMUM AND MINIMUM PENALTIES:

Maximum of life imprisonment, mandatory minimum 10 years imprisonment, at least 5 years supervised release, $4,000,000 fine, $100 special assessment

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Approved As To Form: _/s/ Keslie Stewart_
AUSA KESLIE STEWART

_/s/ WS Armstrong_
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

6-1-07
Date

at Oakland, California
   City and State

WAYNE D. BRAZIL, MAGISTRATE
Name & Title of Judicial Officer

_/s/ Wayne D. Brazil_
Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

## AFFIDAVIT

I, William Todd Armstrong, being duly sworn, do hereby depose and state:

1. I am a Special Agent (SA) of the United States Department of Justice, Drug Enforcement Administration (DEA). My duties and responsibilities involve the investigation of criminal violations of the Controlled Substances Act (Title 21, United States Code) and other duties imposed by law.

2. I am currently assigned to the San Francisco Field Division, Oakland Resident Office Enforcement Group 1 (GP1), and have been so employed by the DEA since August 2002. I received formal training at the Drug Enforcement Administration Basic Agent Training Academy located at the DEA Training Center in Quantico, Virginia. This sixteen-week DEA Basic Agent Academy included instruction in, but not limited to, basic narcotic investigations, drug identification, drug detection, familiarization with United States narcotics laws, money laundering techniques and schemes, identification and seizure of drug-related assets, undercover work, and surveillance operations. I have been the affiant and participated in the execution of multiple search warrants in which controlled substances were seized. During my tenure with DEA, I have conducted and assisted in narcotics investigations, which have resulted in the arrests of numerous individuals for violations of federal and state narcotics laws. These investigations have covered illegal substances including marijuana, crystal methamphetamine, methamphetamine, ecstasy (MDMA), heroin and cocaine. I have also received on-the-job training in advanced investigative techniques from senior DEA Agents.

3. I am participating in a DEA investigation concerning the distribution and sales of controlled substances, specifically methamphetamine. This affidavit contains information I believe establishes probable cause for this application. I make this affidavit in support of a criminal complaint for the defendants in this matter: Joel Sanchez, Juan Carlos Zepeda-Gonzalez, and Alfredo Sanchez.

4. I make this affidavit based on personal knowledge derived from my participation in this investigation and, in part, upon information from oral and written reports about this and

1

other investigations that I have received from other DEA agents. Not all of the facts known to me about this investigation are included within this affidavit. I have set forth only the facts I believe necessary to establish probable cause to believe the defendants Joel Sanchez, Juan Carlos Zepeda-Gonzalez, and Alfredo Sanchez did knowingly and intentionally possess with intent to distribute methamphetamine, a Schedule II substance, including more than 500 grams, in violation of Title 21 United States Code, Sections 841(a)(1) and 846.

5. A DEA Confidential Source, hereafter referred to as CS, told agents that he/she has bought pound quantities of methamphetamine from Joel Sanchez on numerous occasions during the past year and a half in Hayward, California. The CS further provided a telephone number of 510-719-8374 for Joel Sanchez. The CS initially only knew the methamphetamine supplier as Joel. Agents showed the CS a California driver's license photograph of Joel Sanchez. The CS positively identified Sanchez as the individual that had supplied him/her in the past. A query of the California Department of Motor Vehicle database provided that Sanchez had a birthdate of April 21, 1959 and resided at 1537 166th Avenue, San Leandro, California.

6. Between the dates of May 9, 2007 and May 30, 2007, the CS placed 6 recorded telephone calls and one unrecorded telephone call to Joel Sanchez at telephone number 510-719-8374. The calls were made in an attempt to set up the purchase of five pounds of methamphetamine for $14,000.00 per pound in Hayward, California.

7. On May 31, 2007 at approximately 1:46 pm, the CS placed a recorded telephone call to Joel Sanchez at 510-719-8374. The CS and Joel Sanchez agreed to meet at the Nation's Burger at 3:30 pm. Agents believe the CS and Joel Sanchez were referring to the Nation's Burger located at 24999 Santa Clara Street, Hayward, California because the CS had previously stated that they had conducted numerous narcotics negotiations at that same location. The CS asked if Sanchez was "ready to go" to which Sanchez stated yes. The CS further asked him if he would have "it" with him to which he replied yes.

8. At approximately 2:10 pm, the CS received a telephone call from Joel Sanchez from telephone number 510-719-8374. During this call, Sanchez offered to buy the CS something to eat. The CS declined stating that his/her niece was shopping. The two again agreed to meet at 3:30 pm at the Nation's Burger. This telephone call was unrecorded, but was received and overheard in the presence of SAs Todd Armstrong, Michael Malocu, and Lee Herd.

9. At approximately 3:28 pm, the CS placed an unrecorded telephone call to Joel Sanchez at

510-719-8374 from within the Nation's Burger in the presence of SA Gina Giachetti. SA Giachetti was portraying the role of the CS' niece, in an undercover capacity. Sanchez stated that he would be there in three minutes and that he was driving his little Nissan.

10. At approximately 3:32 pm, SA Armstrong observed a charcoal gray Nissan 280ZX enter the Nation's Burger parking lot from Santa Clara Street. The Nissan circled the parking lot prior to parking on the west side of the Nation's Burger. The CS and SA Giachetti made visual contact with Sanchez before he parked while they were standing at the doorway of the restaurant. They left Nations and greeted Sanchez at his vehicle as he got out. Sanchez was the sole occupant of the car. SA Armstrong and SA Malocu were able to identify Joel Sanchez from a California driver's license photograph of him they had previously viewed.

11. The CS introduced SA Giachetti to Sanchez as the CS' niece. The initial stages of the conversation between SA Giachetti, the CS, and Sanchez primarily revolved around the location of where the five pound methamphetamine transaction was to take place. The conversation also revealed that Sanchez was not in possession of the methamphetamine at the time. This conversation took place at Sanchez's vehicle. After several minutes, they finally agreed to meet at the McDonald's Restaurant in twenty minutes. Sanchez told SA Giachetti that she would be able to fit all the methamphetamine inside her purse. Agents believe the CS and Joel Sanchez were referring to the McDonald's Restaurant located at 355 West A Street, Hayward, California because the CS previously stated that the CS and Sanchez conducted numerous narcotics transactions at that same location. SA Giachetti was wearing a transmitting device that was recorded throughout the negotiation.

12. At approximately 3:47 pm, Joel Sanchez entered into the driver's seat area of the Nissan 280ZX. Sanchez once again circled the parking lot prior to exiting onto Santa Clara Street heading north.

13. At approximately 4:05 pm, SA Brian Keenan observed the Nissan 280ZX arrive and park on the north curb of 166th Avenue in the vicinity of 1537 166th Avenue, San Leandro, California. Sanchez got out of the car and walked to a white vehicle, later identified as a Toyota Camry. Sanchez walked to the vehicle empty handed. The Toyota Camry was parked in a driveway controlling access to an apartment complex. Sanchez entered into the right rear passenger area of the vehicle. The Toyota Camry sat for several minutes before backing out of the driveway onto 166th Avenue and heading west.

14. At approximately 4:13 pm, SA Keenan observed the Toyota Camry arrive at a gas station located at the intersection of 166th Avenue and East 14th Street, San Leandro, California.

SA Keenan observed one or two individuals exit the Toyota Camry. The vehicle then departed the area headed south on East 14th Street.

15. At approximately 4:22 pm, SA Keenan observed the Toyota Camry arrive at the McDonald's located at 355 West A Street, Hayward, California and park within the parking lot.

16. At approximately 4:24 pm, SA Keenan observed the same white Toyota Camry exit the McDonald's parking lot onto West A Street and immediately reenter a Circle K gas station that was adjacent to the McDonalds. The Camry backed into a parking space at the Circle K.

17. Simultaneously, the CS received an unrecorded telephone call from Sanchez from telephone number 510-719-8374 in the presence of SA Giachetti. Sanchez stated that there was a fully marked police car that had arrived at the McDonald's. The CS also stated that he/she had too observed the police car entering the parking lot and expressed concern to Sanchez. During the call, Sanchez and the CS initially discussed changing the meeting location, but agreed to meet back at the McDonald's after observing the marked patrol car exit the parking lot. Several agents, to include SA Armstrong and SA Malocu, confirmed the police car did enter into the lot. A telephone call was made to the Hayward Police Department to have the police car leave the area.

18. At approximately 4:27 pm, SA Giachetti and the CS arrived and parked at the McDonald's Restaurant. Meanwhile, SA Keenan and SA Dan Offield observed the white Camry depart the Circle K and loop behind the McDonald's in a clockwise fashion on side streets, before going back to the McDonald's. SA Keenan observed the Camry park curbside on one of the side streets prior to going back to the meet location.

19. At approximately 4:30 pm, SA Giachetti observed the white Toyota Camry enter the McDonald's parking. SA Giachetti observed Joel Sanchez sitting in the rear right passenger seat of the suspect vehicle and actually waved to her and the CS as they passed. SA Giachetti and the CS were seated within an undercover vehicle, a black Dodge Magnum. As the Toyota Camry parked just north of the undercover vehicle, SA Giachetti and the CS got out of the car. Joel Sanchez still seated within the Camry and with the window down, told SA Giachetti and the CS to come to the rear left passenger seat to view the suspected methamphetamine. SA Giachetti peered into an already open white cardboard box within a yellow plastic shopping bag. The box appeared to contain five bundles of a crystalline substance further wrapped in clear Ziploc style bags. At this time, SA Giachetti gave the

4

pre-arranged arrest signal to the arrest teams. Joel Sanchez, Juan Carlos Zepeda-Gonzalez, and Alfredo Sanchez, were arrested without incident. Juan Carlos Zepeda-Gonzalez was seated in the front right passenger seat and Alfredo Sanchez was the driver of the Toyota Camry. All three individuals were then identified through documents that they had in their possession and inquiries made from agents about their personal biographical information. The three arrested individuals were then transported to the DEA Oakland Resident Office for booking procedures. SA Michael Malocu recovered the suspected methamphetamine from the vehicle and transported it back to the Oakland Office.

20. From the time Joel Sanchez approached the white Toyota Camry empty handed until the arrest of the three individuals at the McDonald's parking lot, agents maintained constant visual surveillance of the vehicle. At no time was any item placed in the car while under surveillance.

21. At approximately 6:30 pm, SA Malocu and SA David Zahn conducted a presumptive field test of a sample of suspected methamphetamine from one of the five bundles recovered from the Toyota Camry. The field test indicated a presumptive positive result for the presence of amphetamine. The approximate gross weight of the five bundles of suspected methamphetamine was 2500.8 grams.

22. At approximately 7:58 pm, SA Malocu and SA James Nuttall interviewed Alfredo Sanchez regarding his involvement in (05-31-2007) the narcotics transaction on May 31, 2007 at the Hayward McDonald's on West A Street. Prior to the interview, SA Malocu advised Alfredo Sanchez of the Miranda Warning. Alfredo Sanchez waived his rights both verbally and in writing. Alfredo Sanchez stated that in the early afternoon hours on May 31, 2007, Sanchez was driving his Toyota Camry in Turlock, California. Sanchez stated that his two friends, Omar Perez and Hector Reynoso, were inside the Camry with Sanchez. Sanchez stated that while driving in Turlock, he traveled on "Countryside" (a street Sanchez described to be in Turlock) to a Shell Gas Station where Sanchez picked up Juan Carlos Zepeda-Gonzalez. Sanchez stated that Gonzalez arrived at the Shell Gas Station in a Chevrolet pickup truck that Gonzalez's brother was driving. Sanchez said that when Gonzalez exited his brother's truck, Gonzalez was carrying a box that Gonzalez brought into the back seat area of Sanchez' Camry. Sanchez stated that Gonzalez sat in the rear compartment area of the Camry. Alfredo Sanchez claimed not to know what specifically was inside the box that Gonzalez brought into the Camry.

23. Alfredo Sanchez stated that after he picked up Gonzalez, all four individuals traveled in the aforementioned Toyota Camry to the area of San Leandro, California. Alfredo Sanchez

5

stated that he (Alfredo) wanted to travel to San Leandro to fill his marijuana prescription at a nearby dispensary. Sanchez stated that when they arrived in the vicinity of San Leandro, Gonzalez instructed Sanchez to exit off the freeway early and travel to 1537 166th Avenue, San Leandro, where they met Joel Sanchez in the driveway area of the residence. Alfredo Sanchez said that Joel Sanchez then entered the back seat area of the Camry, which was parked in the driveway facing away from 166th Avenue. Alfredo stated that Joel walked from the rear vicinity of the vehicle prior to entering the Camry. Alfredo Sanchez went on to say that Joel Sanchez did not feel comfortable with the "white guys" (Perez and Reynoso) in the car and instructed Alfredo Sanchez to drop them off at a nearby business in the vicinity of 166th Avenue and 14th Street, San Leandro. Alfredo Sanchez then stated that after he dropped off Reynoso and Perez, Joel Sanchez told Alfredo to travel to the McDonald's Restaurant at 355 West A Street, Hayward, California. Alfredo stated that Joel said something to Gonzalez about a Dodge Magnum car. Alfredo stated that he (Alfredo) was under the impression that Joel was interested in purchasing a Dodge Magnum. Following the arrest at approximately 5:30 pm, SAs Mary Toomey and Heather Boone approached two individuals that were pacing on the sidewalk in the vicinity of East 14th Street and 166th Avenue in San Leandro. These two individuals were suspected by agents to be the subjects that were dropped off previously from the Toyota Camry at 166th Avenue and 14th Street. These two individuals fully identified themselves to SAs Toomey and Boone as Omar Perez (DOB: 1-15-1986) and Hector Reynoso (DOB: 1-7-1982).

24. Alfredo Sanchez stated that prior to entering the McDonald's Restaurant on A Street, Joel Sanchez told Alfredo not to pull into the McDonald's because a marked police cruiser was inside the lot. Alfredo stated that he was instructed by Joel to pull into the Circle K gas station next door to the McDonald's and wait until the police car departed the area. Alfredo stated that he (Alfredo) then circled the block and then pulled into the McDonald's parking lot. Alfredo stated that while inside the lot, Joel pointed to a Dodge Magnum that was parked inside the McDonald's lot. Alfredo said that he parked the Camry near the Magnum and Joel was then greeted by two white women. Alfredo stated that he was not sure if Joel got out of the back passenger seat of the car or rolled the window down. Alfredo said that the two white women then looked inside the box that Gonzalez placed in Alfredo's car in Turlock earlier in the day. Alfredo stated that after the two women looked inside the box which was located on the rear driver-side seat, there was a very brief discussion between Joel and the two women about "going to get money." Alfredo stated that he was then arrested.

25. Based upon the aforementioned facts and my training and experience, I believe there is probable cause to believe that the defendants, Joel Sanchez, Juan Carlos Zepeda-Gonzalez,

6

and Alfredo Sanchez, did knowingly and intentionally possess with intent to distribute methamphetamine, a Schedule II substance, including more than 500 grams, in violation of Title 21 United States Code, Sections 841(a)(1) and 846.

26. I declare under penalty of perjury that the facts contained herein are true and correct to the best of my information and belief.

*William Todd Armstrong*
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this ___ day of June, 2007.

HONORABLE WAYNE D. BRAZIL
United States Magistrate Judge

7